ALBANY,
Jan. 1832.

Morgan
v.
Varick.

---

## MORGAN vs. VARICK.

The severance of machinery from a mill does not divest the owner of his property; what was before part of his *freehold*, by the severance becomes *personal property*.

A *disseisee*, after recovering possession, may maintain *trespass* against the *disseisor* or his *servants*, or a *stranger* acquiring title from the disseisor. Where a stranger derives his title from a person rightfully in possession for the time, *trespass* does not lie against him.

Where property is severed from the freehold and *remains upon the premises*, and is *subsequently removed*, the statute of limitations is no bar if the suit *for the removal* be brought within six years, although more than six years have elapsed since the severance.

The person in possession of the property, by *requesting* another to remove it from the premises, subjects himself to an action of *trespass*.

An action for *mesne profits* will not lie until after a recovery in ejectment; nor will it lie for an injury to the freehold until after such recovery; and if the inquiry was done more than *six years* before the commencement of the suit for the recovery of damages, and the defendant pleads the *statute of limitations*, the plaintiff is remediless, although the injury was done after the commencement of the ejectment, and the defendant prevented judgment in the ejectment suit after verdict by an *injunction* from chancery.

ALBANY,
Jan. 1832.

Morgan
v.
Varick.

This was an action of trespass for *mesne profits* and *de bo-nis asportatis*, tried at the Cayuga circuit in January, 1830, before the Hon. DANIEL MOSELEY, one of the circuit judges.

In July, 1821, the plaintiff commenced three ejectment suits for the recovery of part of a lot of land, on which there was a steam mill for the grinding of grain. Varick defended the suits as the landlord of the tenants; the causes were tried at the Cayuga circuit in June, 1822, and verdicts entered for the plaintiff, subject to the opinion of this court on cases made. The plaintiff offered to prove that in June, 1823, when the case had not yet been argued, Varick filed a bill in equity and obtained an injunction staying all proceedings in the suits at law until the order of the court of chancery, and that there was a stay accordingly until October, 1828, when the injunction was dissolved, and the bill dismissed, which evidence was objected to, and overruled by the presiding judge. In February, 1829, judgments were rendered for the plaintiff on the cases made, which were duly entered, writs of possession issued and executed, and the plaintiff put in possession of the premises in March, 1829. In *April*, 1829, this suit was commenced, the plaintiff declared for the *mense profits* from 1821 to 1829, and also demanded in another count *damages* for the removal of four sheet iron boilers, and other machinery belonging to the steam mill, which he charged the defendant with having removed and carried away. The defendant pleaded the general issue and the statute of limitations. On the trial, the defendant conceded that *he*, instead of the defendants in the ejectment suits, should be considered as having been in the possession of the lands from the time of the commencement of the suits until the execution of the writs of possession, and that at the time of the commencement of the suits, there was a large stone building on the premises formerly used as a steam grist mill, in which there were four sheet iron boilers and other machinery, and apparatus necessary for propelling by steam four run of stones for the grinding of grain. It was then proved that in the autumn of 1822, Varick sold the boilers and machinery of the mill to a Mr. Leavenworth for the sum of $500, and the boilers and machinery were taken down and severed from the mill in December,

1822, and a receipt given for the same by an agent of Leavenworth, but they were *left upon the premises* until *August*, 1823, when they were removed and taken away by Leavenworth *at the request of the defendant.* The fixtures at the time of the severance from the mill were worth $2637, 25. The value of the *mesne profits* for six years preceeding the commencement of this suit was shewn to be $1650. The judge decided, and so instructed the jury, that the plaintiff was entitled to recover the *mesne profits*, but was not entitled to recover damages for the removal of the *machinery* of the mill, and a verdict was accordingly rendered for $1650, the value of the mesne profits, exclusive of the machinery. The *plaintiff* having excepted to the decisions of the judge, moved for a new trial.

*J. A. Collier*, for the plaintiff. The evidence of the *delay* of the ejectment suits by the injunction sued out by the defendant ought to have been received. A defendant should not be permitted to avail himself of his own wrongful act to avoid the payment of rents and profits. By suspending the suits at law, unless the proof offered is received, the defendant can be made responsible for only *six years* rents and profits, whereas he was in possession nearly *eight years*. Where a defendant removes a cause from an inferior court by *habeas corpus*, and pleads the statute of limitations, the plaintiff is allowed to reply the commencement of the suit in the court below. 2 Salk. 424. 4 Starkie's Ev. 889. 2 Haywood, 145. Tillinghast's Ballantine, 111, n. 1. 1 North Car. R. 95. So here the plea of the statute ought to be allowed to be rebutted by proof that the delay was occasioned by the defendant.

By the severance from the mill, the machinery became *personal property*, and the right of the plaintiff was as perfect as before. In *August*, 1823, whilst the property remained on the premises eventually recovered, the defendant *requested its removal.* By this act he became responsible, and the statute of limitation does not protect him, as within six years thereafter the suit was commenced. 7 Cowen, 95. 3 Wendell, 104. 1 Chitty's Pl. 67. 7 Cowen, 735.

ALBANY,
Jan. 1832.

Morgan
v.
Varick.

*C. A. Mann & J. A. Spencer*, for defendant. · The evidence of the *injunction* was correctly excluded. An injunction does not stay the running of the statute ; there is no such exception ; but if it did, it should have been specially pleaded. To save the statute, the plaintiff should have brought his suit for the trespass, and the court might have stayed the proceedings until the determination of the ejectment.

The defendant is not liable for the machinery. The only act he did was the severance of it from the mill, which took place in December, 1822, more than *six years* before the commencement of the suit, and he is therefore protected by the statute. After that time, the defendant was a mere naked bailee ; Leavenworth was the owner of the property, and had the right to remove it without the assent of the defendant, and being a *purchaser*, was not liable as a *trespasser*. 4 Cowen, 329. 3 Caines, 261. 11 Johns. R. 384. 11 Co. 51. If Leavenworth was not a trespasser, the defendant, by requesting the removal, did not become a trespasser. Besides, the removal was not the result of the request of the defendant, but of the assertion of a right by Leavenworth. To charge one as directing a trespass, the injury must be the direct consequence of such direction. 1 Caines, 253. Besides, to maintain an action *de bonis asportatis*, the plaintiff must have either the actual possession, or the right to reduce the property in question to immediate possession ; the plaintiff here had neither. 8 Johns. R. 482. 4 T. R. 483. 7 id. 11.

*By the Court*, SAVAGE, Ch. J. The action for *mesne profits* is an action of trespass, and the plaintiff can recover for injuries done within six years before the commencement of the suit, and no more, where the statute of limitations is pleaded. In this case, the plaintiff was delayed in his recovery more than six years pending the suit. If the plaintiff be deterred from commencing his suit by an injunction from chancery, during such delay the statute does not attach, and after the injunction is dissolved, he may prosecute within the time which he had when the injunction was served ; but that clause of the statute has no application here. The action for mesne profits is consequent upon a recovery in an action of

ejectment. The plaintiff had no right to this action until af- ter judgment in the ejectment suit. Since his right accrued, there has been no delay by injunction. It seems indeed unjust that the defendant should obtain tortious possession of the plaintiff's real estate, remove the buildings or the timber which constituted perhaps the principal value, and secure himself from responsibility by delaying the action of ejectment for six years; but there is no provision for a case like this in the statute. A disseissee cannot maintain trespass until he regain possession; he is then remitted, by relation to his former seisin and possession as between him and the disseisor; he may therefore maintain an action for an injury to the freeholder, as well as for the rents and profits. In this case the severance of the steam engine from the building was made after the commencement of the ejectment, but more than six years before the commencement of this suit; and it seems to have been made in wantonness, as it was sold for less than one quarter of its real value.

ALBANY,
Jan. 1832.

Morgan
v.
Varick.

It has been decided that cutting timber on the land of another, does not divest the owner of his title to his property. What was before part of his freehold, has by the severance become personal property, and may be reclaimed. 3 Wendell, 104. 7 Cowen, 59. In *Fanant* v. *Thompson*, 5 Barn. & Ald. 826, it was held that certain mill machinery, when severed from the mill, became the personal property of the owner of the mill, and though it was sold as the personal property of the tenant to whom the mill had been demised, it was held that no property passed to the purchaser, but that the landlord was entitled to bring trover. Had the machinery in that case been demised to the tenant as personal property, the action could not have been sustained until the termination of the lease, according to *Gordon* v. *Harper*, 7 Taunt. 9, and several other cases.

The case before us has no connection with that class of cases where the person in possession had *the possession lawfully*. *Case* v. *Goes and others*, 3 Caines, 361, was trespass for carrying away saw-logs. The defence was a license from one Bull, who was in possession by virtue of a writ of restitution, which however was afterwards quashed. Bull was in possession by

the judgment of a court having jurisdiction of the subject matter. The proceedings having been set aside for irregularity, Bull was considered a *trespasser* by relation, but *not the defendants*, who were strangers. The same principle was applied in *Van Brunt* v. *Schenck*, 11 Johns. R. 337, to a ship which had been seized by color of law. It is true that in both those cases, the judges who deliver the opinion of the court, in each case, quoted a dictum of Lord Coke which was not the point in judgment before him, in which he says that the disseisee, after recovering possession, may maintain trespass against the disseisor and his servants, but not against strangers, as the grantee of the disseisor. The general doctrine of liability is also recognized in *Dewey* v. *Osborn*, 4 Cowen, 329, where the defendant was acting as servant to the defendant in the ejectment suit, in removing a building after verdict. Mr. Justice Sutherland, after quoting the previous cases and Lifford's case, holds that the action lies against the disseisor and his servants, *though outherwise it seems as to strangers*. This opinion was uncalled for in all cases in this court, as it was in Lifford's case. If that be law, any irresponsible person may turn the owner forcibly out of possession of his real estate, sell the buildings and the timber, and thereby destroy the value of the property ; he may sell it, too, under ever so suspicious circumstances, as in this case, for less than one quarter of its value, and according to the doctrine quoted, the purchaser is safe, and the owner has no remedy but against the trespasser only. Fortunately for the owners of real estate, such is not now the law, whatever it may have been in the time of Lord Coke. In Lifford's case, 11 Co. 51, the fourth point decided was, that by a conveyance of a reversion, trees would pass, and by a covenant to stand, seized, the whole land passed, and trees as parcel of the inheritance. Lord Coke then stated various cases which had been referred to, and among other things, said that as to cutting down trees, &c. and other things annexed to the freehold, there were various opinions in the books as to against whom an action will lie, and as to the property of them ; " and therefore," he says, " if one disseises me, and during the disseisin he cuts down the trees or grass, or the corn growing upon the land, and afterwards I re-enter, I shall have an

ALBANY,
Jan. 1832.

Morgan
v.
Varick.

action of trespass against him *vi et armis* for the trees, grass, corn, &c.; for after my regress, the law as to the disseisor and his servants supposes the freehold always continued in me; but if my disseisor makes a feoffment in fee, gift in tail, lease for life, years, &c. and afterwards I re-enter, I shall not have trespass *vi et armis against those who came in by title;* for this fiction of the law, that the freehold continued always in me, shall not have relation to make him who comes in by title a wrong doer *vi et armis,* for *in fictione juris semper equitas existat,* but in such a case I shall recover all the mesne profits against my disseisor, in the same manner as the disseisee in such cases should recover, in an assize at the common law before the statute of Gloucester, ch. 1, damages only against the disseisor." So he says, "If my disseisor, is disseised, I shall not have an action against the second disseisor, and I shall recover all my mesne profits against my disseisor;" and he cites the year books. Lifford's case was decided the 12th of James 1st, about A. D. 1615. The case of *Holcomb* v. *Rawlins,* Cro. Eliz. 540, was decided in the 28th Elizabeth, about A. D. 1596. That was trespass *quare clausam fregit.* The defendant pleaded that long before, Thomas Clerk was seised in fee, and let to him for years, and gives color to the plaintiff. The plaintiff replies that he himself was seised until by the said Thomas Clerk disseised, who let to the defendant, and that after, he re-entered, and the trespass *mesne* betwixt; the defendant demurred. The defendant's counsel cited some of the same cases relied on by Lord Coke, but the court, three justices to one, gave judgment for the plaintiff; for, by the re-entry of the disseisee, he is remitted to his first possession, and as if he never had been out of possession; and then all who occupied in the mean time, by what title soever they came in, shall answer unto him for their time; as if a disseisor had been disseised by another, the first disseisee re-enters, he shall in trespass punish the last disseisor; for otherwise it would be mischievous unto him, for after his re-entry, he shall have no remedy for the mesne profits." Mr. Justice Buller, in his N. P. Cas. p. 86, 7, quotes the doctrine of Lifford's case, and says, " So the law is laid down by Lord Coke; but it may admit of doubt, for there are cases to the contrary, and the reason of

the law seems to be with them;" and cites Cro. Eliz. 540, and Moor, 461; and in our own court it is every day's practice to recover mesne profits against a person who has come into possession under the defendant in ejectment since the commencement of the suit. The plaintiff recovers against each occupant for the time he has been in possession. In *Jackson* v. *Stone*, 13 Johns. R. 447, it was decided that where, during the pendency of an action of ejectment, the defendant gives up the possession to a third person, and afterwards the plaintiff in ejectment recovers judgment, such third person is liable for the mesne profits; which is directly contrary to Lifford's case. The court say, "It is perfectly well settled that a recovery in ejectment, as far as respects the right to mesne profits, is conclusive of the title as to the land possessed by the defendant when the action was brought, into whose hands soever it may subsequently pass by transmutation of the possession from the defendant in ejectment. In that case, the defendant shewed a perfect title in himself to the premises which he claimed, but the court did not admit it as any defence to the action. As was said in *Dewey* v. *Osborn*, 4 Cowen, 329, "The only difficulty upon the point is whether the remedy shall extend to a stranger who comes in by title under the disseisor, or be confined to the disseisor and his servants." I have endeavored to shew that the remedy extends as well to *strangers* as to the *disseisor* himself. The disseisor being in possession by wrong, has no legal right to the possession, nor to any thing belonging to the inheritance; having no title, he can convey none. If, under such circumstances, the disseisor sells timber or buildings, or any thing attached to the freehold, the severance of such property is a trespass, and the article when severed becomes the personal property of the disseisee, the owner of the inheritance.

In this case the steam engine before severance was part of the real estate; when severed, it became the personal property of the plaintiff; it *remained upon the premises* until August, 1823, within six years before the commencement of this suit. No title having passed out of the plaintiff, nor to Leavenworth, all who were concerned in its removal were trespassers. The defendant Varick, by requesting Leavenworth to remove the

property, became a party to the trespass, and is liable in this action. Any unwarrantable and unauthorized interference with the property of another is sufficient to constitute the party a trespasser. The defendant requested Leavenworth to remove the steam boilers and other property, and thereby made himself a trespasser. The cases cited by the plaintiff establish this proposition.

A new trial should be granted; costs to abide the event.