## JUDSON *vs.* COOK.

All who aid, command, advise or countenance the commission of a tort by another, or who approve of it after it is done, are liable, if done for their benefit, in the same manner as if they had done the tort with their own hands. Thus where the president of a bank, at whose suit an attachment had been issued and levied on the property of the defendant therein, when applied to by the constable for directions in regard to selling the property, told him to do his duty; and directed the attorney of the bank to examine the question, and the facts, in relation to a prior lien upon the goods, and to act his judgment, whereupon the attorney instructed the constable to sell the goods; and the president of the bank attended the sale, and bid off a part of the property; *Held* that this was sufficient to connect the president with the taking or detaining of the goods, and that he was liable in an action therefor.

THIS was a motion to set aside a nonsuit, granted at the Chemung circuit, in June, 1849; and the only question to be determined was whether the evidence given by the plaintiff was sufficient to connect the defendant with the taking or detaining the goods of the plaintiff, for which the action was brought. The facts were these. The plaintiff was sheriff of Chemung county, and as such had levied on the goods in question, by virtue of an execution in favor of one Hotchkiss and against Alex'r Cornell and William H. Holmes. Subsequently the defendant, who was president of the Chemung Canal Bank, handed a note against said Alexander Cornell to a Mr. Vanderlip, an attorney, for collection, and said attorney took out an attachment against Cornell in favor of the bank, and gave it to William McCann, a constable, to execute. McCann levied on the property in ques-

Judson v. Cook.

tion, and sold the same on an execution issued on the judgment obtained in said attachment suit. After McCann took the goods on the attachment, he heard of the previous levy by the plaintiff and informed the defendant of it, and asked for directions. The defendant replied, "You know your duty; do that, and that will be right." The defendant was at the sale and bid off some of the property at one bid. After Vanderlip, the attorney, was informed that the bank attachment had been served, and that the plaintiff claimed the goods under a former levy, he conferred with the defendant in regard to selling the goods; and the latter directed the attorney to *examine the question and facts*, and act his judgment, and Vanderlip concluded to sell the goods, and so directed the constable before the sale. The defendant was present at the sale. Vanderlip received all his directions about the matter from the defendant. Mr. Quinn, the agent or attorney for the plaintiff, met the defendant at the store of one Beecher, where the goods were deposited after the levy by the constable, and before the sale, and asked him if he would abandon the levy; and he declined to do so. The defendant was called by the plaintiff as a witness, and testified that he heard of the conflicting claims, and talked with Vanderlip about it before the sale, and told him to do his duty; and that he only acted as an officer of the bank. On this evidence the plaintiff was nonsuited, for the reason that the defendant was not shown to be guilty of converting the goods; and the plaintiff excepted.

*E. Quinn*, for the plaintiff.

*B. Davis Noxon*, for the defendant.

*By the Court*, SHANKLAND, J. For the purposes of this motion to set aside the nonsuit, it must be taken for granted that the plaintiff had consummated a levy by virtue of the execution in his hands, and was legally entitled to the possession of the goods, and that the taking and conversion by McCann, under the attachment and execution in favor of the bank, was tortious:

The admitted rule of law is, that all who aid, command, advise or countenance the commission of a tort by another, or who approve of it after it is done, if done for their benefit, are liable in the same manner as they would be if they had done the same tort with their own hands. (19 *John.* 381.  *Bishop* v. *Ely,* 9 *Id.* 294.  *Morgan* v. *Varick,* 8 *Wend.* 587.  *Coats* v. *Darby,* 2 *Comst.* 517.  1 *Chit. Pl.* 67.)

Was there sufficient evidence to go to the jury in this case, that the defendant Cook did any act to make him liable, within the above rule of law? I am clearly of opinion that he did.  In the first place, he was president of the bank, the plaintiff in the suit, whose process he undertook to control; and he may properly be assumed to have been a stockholder in the corporation, and interested in the avails to be collected in that suit.  In the second place, when he was inquired of by the constable, for directions, he answered, "Do your duty;" an expression which, when taken in connection with the other facts in the case, may and probably did mean, *go on and sell.*  At all events, his meaning was a proper question for the jury.  Again; when informed by Vanderlip of the plaintiff's claim to the property, and on being asked for directions whether to sell the goods on the bank execution, he directed the attorney to examine the *question* and *facts,* and act his judgment.  What was this direction but saying to the attorney, go on and sell, if in your opinion we can hold the property? The attorney decided to sell, and the defendant is as responsible for the directions which the attorney gave, in pursuance of the discretion vested in him by the defendant, as he would have been if he had given the same directions in person.  Again; after the attorney had given directions to sell, in pursuance of the discretion vested in him by the defendant, the latter attended the sale, and by his presence countenanced the transaction, not by his silent presence alone, but by actually bidding off some of the property.  In the case of *Babcock* v. *Gill,* (10 *John.* 287,) it was held that where the defendants purchased property of one Whitney, knowing of the plaintiff's claim to it, it was a conversion, for which they were liable.  In the present case the defendant purchased a portion of the property

sold by McCann, knowing of the plaintiff's claim. This was assuming a control of it in defiance of the plaintiff's claim, and was a conversion of the property thus purchased.

Again; when the plaintiff's agent called on the defendant, to relinquish the levy on the bank execution, he declined to do so. He did not decline on the ground that he had not the control of the execution, nor for any other special reason. He having the control of the execution, his declining to relinquish the levy was, under the circumstances of this case, an assertion of the right to hold the property in defiance of the plaintiff's claim. Taking the whole evidence together, it makes out a strong case, connecting the defendant with the conversion; and the fact that he acted as the agent of the bank, does not in the least diminish his liability.

There should be a new trial granted, with costs to abide the event. (This action was commenced in 1846, and before the code.)

New trial granted.

[Delaware General Term, July 13, 1852. *Mason, Crippen, Shankland* and *Gray*, Justices.]