DUANE (GOLDHAWK v.). See Case No. 5,511.

## Case No. 4,105.
### DUANE v. GOODALL.
[1 Cal. Law J. 283.]

District Court, N. D. California. March 7, 1863.

MARINE TORTS—JOINT TRESPASSERS — STATUTE OF LIMITATIONS.

1. There is no fixed limitation of time within which suits must be brought in the admiral-

ty; it is discretionary with the court to determine whether a demand has become too stale to support an action.

2. Where D. was forcibly taken on board a steam-tug of which G. was master, and carried without the Heads of the Bay of San Francisco, and there delivered over to the steamer Golden Age, of which W. was master, and thus carried to sea against his will, G. and W. are joint trespassers in the act or wrong, and a recovery and satisfaction against W. bars an action against G. for the same wrong.

[This was a libel by Charles P. Duane against Charles Goodall.]

HOFFMAN, District Judge. The principal allegations of the libel, and that the facts therein stated constitute a marine tort, for which this court has jurisdiction to award damages, are admitted.

It is objected (1) that the demand is barred by prescription, or that it has become stale. In the admiralty there is no fixed limitation of time within which suits must be brought. The court will not, it is true, entertain stale demands, but it is left to the discretion of the court to pronounce whether, in view of all circumstances of each particular case, the demand be so stale as to be deemed neglected and abandoned. Pars. Mar. Law, 665; Ben. Adm. §§ 574, 575. It is unnecessary to detail all the circumstances of this case at bar. They are such as, in my judgment, are abundantly sufficient to account for and excuse the long interval which elapsed between the commission of the wrongs complained of and the institution of the suit.

The second exception of the respondent presents a much graver objection. It sets up, in substance, that the libelant has already sued and obtained judgment against James Watkins, master, and ——— Watson, mate, of the Golden Age, for the tort now complained of, and that that judgment has been satisfied. It is a familiar principle that, when several persons are jointly concerned in the commission of a wrong, each is separately responsible for the damage done by the acts of all. He may, therefore, be sued separately, and a full indemnity recovered of him by the injured party. He cannot object that the other joint trespassers are not joined; nor can they, if subsequently sued, plead in abatement, or bar, that a suit is pending, or that judgment has been recovered against him. But if that judgment has been satisfied, and the injured party has received what a jury has awarded to be a full indemnity for the tort, it is obvious that he should not be permitted any further compensation from the other joint trespassers. The rule, therefore, that against joint trespassers there may be several recoveries, but only one satisfaction, is founded on reason and justice. If, then, in the case at bar, the tort complained of was a joint tort in which the party now sued and those heretofore sued were jointly concerned, it is ob-

vious that the satisfaction of the judgment against the latter is a bar to any further claim for compensation against the former. The inquiry, therefore, is: Is the cause of action in both cases a joint tort?

The libel alleges that the libelant was, on the 5th day of June, 1856, forcibly and against his will, etc., carried from and out of the Bay of San Francisco in the steamtug Hercules, whereof the respondent was master; that he was kept a prisoner on board said tug by an armed band of kidnappers, who were then and there aiding, assisting, combining and confederating with the respondent in a nefarious design to abduct and carry away libelant out of the state; that, in pursuance of such nefarious design and intention, the respondent caused the said steamtug to be kept and lying in waiting off the Heads of this port until an opportunity to transfer the libelant to another vessel occurred; and that the respondent, having combined and agreed with said kidnappers to abduct and carry out of the state the libelant, kept the steamtug in waiting off the Heads until the steamer Golden Age, commanded by one Watkins, approached, and, in pursuance of an understanding and agreement had between the respondent and persons on board the tug and the master of said Golden Age, the said steamer was stopped, at about one hundred yards' distance from the steamtug, for the express purpose of aiding and assisting said Goodall in his said nefarious and unlawful attempt and design of abducting and carrying away the libelant. It is further alleged that said Goodall, well knowing the libelant was on board the steamtug as a prisoner, handcuffed and guarded, and intending maliciously to abduct and carry him away as aforesaid, and combining and confederating as aforesaid with said kidnappers and the said master of the Golden Age, did navigate and employ the steamtug as a means and instrument to accomplish and carry out said nefarious and unlawful abduction, and did, by said means, abduct and carry away the libelant, against his will, to said place on the high seas, where he was transferred from said steamtug to said steamer Golden Age, in pursuance of said agreement and understanding between said Goodall and the said kidnappers and said master of the Golden Age. The libel further sets forth that libelant was carried away in the Golden Age to Acapulco, where he escaped from the duress and imprisonment to which he was subjected on said steamer, and which was but a continuation of the said unlawful combination and confederation of the respondent and the before-mentioned persons to abduct and carry away libelant from the state. The fruitless attempts of libelant to return to this port, his voyage to Panama and destitute condition at that port, his voyage to New York and arrival there in enfeebled health, and with blasted reputation, by reason of the wrongs

inflicted on him, are set forth, and damages claimed in the sum of $25,000. The allegations in the libel against the master and mate of the steamer Golden Age are nearly identical with the foregoing.

That libel sets forth the arrest and imprisonment of the libelant by the vigilance committee; the sentence of banishment by that body; the carrying him on board the steamtug in irons; his imprisonment there; the conveying him to the Heads, where he was transferred to the steamer, which hove to, to receive him; his abduction from the port and transportation to Acapulco; his escape at the latter port; his attempts to return to San Francisco; his being obliged to go to Panama, and thence to New York; his destitution and sufferings on board the steamer, on the Isthmus, and at New York, with the illness and loss of reputation and distress caused by the wrongs inflicted on him. It distinctly charges that Watkins, the commander, and Watson, the mate, of the Golden Age, combined "and confederated with said kidnappers, or persons on board the Hercules, to join and aid them" in completing and carrying out the nefarious, forcible, wicked, and malicious intention and design of abducting and kidnapping the libelant, etc.; that, in pursuance of said combination and confederation, the said Watkins caused his steamer to approach the Hercules, and "stopped and kept her in waiting for the accomplishment of the aforesaid malicious and wicked design of abducting, kidnapping, and forcibly carrying away said libelant."

It is not easy to conceive more direct, explicit and emphatic charges of combination and conspiracy among several persons to commit a joint tort and carry out a common design than are contained in the allegations of the libelant in these cases. Not only is the common design expressly and repeatedly stated, but it is clearly to be inferred from the acts of each in furtherance of the common purpose; and that purpose is expressly declared to be the execution of the so-called "sentence" of the vigilance committee, to the carrying out of which the respondent, in each case, is charged to have lent his own services and the use of his vessel. The facts as they appear in evidence, or as admitted, abundantly sustain these allegations. There can be no doubt that Goodall voluntarily and knowingly received on board his vessel the vigilance committee prisoners, with the intention of conveying them to the steamer, in execution of their sentence, and that the commander of the steamer, in furtherance of the same end, and in pursuance of a previous understanding and agreement, approached the place where the steamtug was waiting for her, in order that the prisoners might be transferred on board and carried to Panama in accordance with the determination or sentence of the committee.

It seems not easy to imagine a plainer or a stronger case of a joint trespass, for the whole of which each person concerned is severally liable. "Where an immediate act is done by the co-operation or the joint act of two or more persons, they are all trespassers, and may be sued jointly or severally for the injury done by all, provided that they acted in concert." 2 Hil. Torts, p. 441; Brown v. Wheeler, 18 Conn. 199. So, all who aid, command, advise, or countenance the commission of a tort by another, are liable as if they had done the tort with their own hands. Judson v. Cook, 11 Barb. 642. So, where several were engaged in playing a game of ball in the public highway, and a traveler lawfully passing was struck and injured accidentally by the ball, it was held that all were liable in trespass, and not merely the individual who threw the ball. 1 Cush. 453. So, to constitute a joint conversion of personal property, the acts of several defendants need not be contemporaneous if their acts all tend to the same result. 35 Me. 86. Thus, if the defendants are actually present, aiding another in the unlawful design of removing the plaintiff's slaves from the state, even though it be for the use and benefit of his wife, each act in furtherance of the common design is the act of all, and all are guilty. 27 Ala. 407. In all these and similar cases the joint liability depends upon the fact that the defendants acted in concert, or that the act of the one sued naturally and ordinarily produced the acts of the others. Guille v. Swan, 19 Johns. 381. "A recovery against one of several parties to a joint tort frequently precludes the plaintiff from proceeding against any other party not included in the action." Thus in an action against one for a battery, or for taking away the plaintiff's posts, or destroying grass in a field, where several persons are concerned, the recovery against one will be a bar to an action against others. 2 Hil. Torts, p. 460.

From the above authorities it is clear that all persons who aid and abet, and especially those who actively co-operate with each other in the commission of a tort, are joint trespassers. Nor is it necessary that all should be present at every part of the transaction, provided they acted in concert, and that the tort was done in execution of a common design, to which each contributed his allotted part. Under the allegations of the libelant himself, or the admitted facts of the case, I cannot perceive room for a doubt that Watkins and Goodall were joint trespassers, engaged in carrying out a common design, and that each is liable in this court for the whole marine tort committed. Indeed, the jurisdiction of the court over the case mainly rests, not on the conveyance of the libelant in the steamtug a few miles down the bay, but not beyond the body of the county or the local jurisdiction, but on his abduction and asportation beyond seas and to a foreign country; and this, it will be perceived, forms the gist of the complaint in both cases. As, then, he has recovered a

judgment and full satisfaction for this wrong against Watkins, who carried him to Acapulco, I am unable to perceive how he can maintain this action against the cotrespasser charged and admitted to have aided and abetted in consummating a design common to both.

Even if, under the allegations and proofs, it were possible legally to separate these acts and to treat the tort of the respondent as separate and distinct from that of Watkins, it would be hardly practicable to measure the damages; for the tort of the respondent would, in that case, be considered as terminating when the prisoner reached the deck of the steamer. The statement of his subsequent asportation and other grievances, for which he has been compensated, would be disregarded, and the recovery limited to an indemnity for the isolated act of carrying him from the wharf to the Heads.

But it is said that the judgment obtained against Watkins was not a judgment on the merits, and is therefore no bar to a subsequent suit against a cotrespasser for a complete indemnity for the whole wrong. The decree entered against Watkins was a consent decree. It is true that the court was not called on to estimate the damages; but the facts were admitted by the parties, and a sum agreed on as a compensation for the wrong. For this sum a decree was entered, the amount decreed was paid, and a satisfaction piece filed. I am unable to see how I can regard this as any less a satisfaction for the tort than if the same sum had been awarded by a court or jury, and accepted by the injured party. That the sum is less than would probably have been decreed as a compensation for the grievous wrongs inflicted on the libelant may be admitted; but he has chosen to accept it in satisfaction of a joint trespass for which various parties were severally liable, and the case presented is not distinguishable from that put in the books, viz. that a recovery and satisfaction against one joint trespasser is a bar to an action against another for the same tort.

Affidavits have been presented with a view of establishing whether the sum decreed was paid and received as a satisfaction for the whole wrong, or only in discharge of the personal liability of Watkins. But the affidavits are conflicting as well as inadmissible. The record in the case of Watkins shows for what injuries the decree was entered, and for those injuries the sum paid was accepted as a compensation. The record and proofs in this case show that the tort now sued on was the same, or, rather, that it was a joint tort committed by several parties acting in concert and pursuance, as the libel so frequently avers, of a common design. In any view I have been able to take of this case, it has appeared to me that recovery and satisfaction obtained in the former suit is a bar to this action.

As a decree was entered against Watkins after the commencement of this suit, the libelant is entitled to his costs, for which a decree will be entered.