## BENJAMIN T. DELANO *vs.* JAMES O. CURTIS.

If, in an action for the conversion of the plaintiff's machinery in a workshop, by the refusal of the defendant's agent to allow it to be removed upon demand, it does not appear that the defendant or his agent ever actually used the machinery, or had the actual possession of it otherwise than by being in the rightful possession of the workshop, and it appears that the defendant had instructed his agent to forbid the removal of any of the machinery, but to use no force to prevent it, and that, upon a demand, which included some machinery to which the plaintiff had no right, the agent forbade the removal of any of it, the question should be submitted to the jury whether this was such a clear and absolute refusal to deliver the machinery to which the plaintiff was entitled as to amount to a conversion; and an instruction to the jury that it was evidence of such an assumption of control or dominion over the property, to the exclusion or in defiance of the plaintiff's right therein, as would amount to a conversion, is erroneous.

If, in an action for the conversion of personal property, it does not appear that the defendant has personally intermeddled therewith in any way, and the evidence of conversion relied upon is the refusal of an alleged agent to allow it to be removed on demand, in compliance with directions received from the defendant, and there is evidence to show that the defendant in giving such direction, and in employing the agent, was merely acting on behalf of a corporation of which he was president, which the agent well knew, the question should be submitted to the jury to determine whether the agent, in his refusal to allow the removal of the property, was acting as the agent of the defendant or of the corporation; and if for the latter, the defendant is not responsible.

The owner of personal property may maintain an action for its conversion by proof that the defendant has previously refused to deliver it to any person who had a right to demand it, although the plaintiff was not then the owner of it.

If, in an action for the conversion of machinery in a workshop, it does not appear that the defendant has ever appropriated the same to his own use, or removed the same, or had the actual possession thereof otherwise than by being in the rightful possession of the workshop, and the alleged conversion consists in the refusal to allow the plaintiff to remove the same upon demand, a subsequent notice to the plaintiff by the defendant that he has relinquished all claim to the machinery should be considered in mitigation of damages.

MERRICK, J.   This is an action of tort, in the nature of trover, to recover the value of the machinery described in the declaration, alleged to have been converted by the defendant to his own use.   It appears that the machinery had been placed by Waterman & Litchfield, by whom it was formerly owned, in a workshop, which, together with the tract of land on which it stood, was mortgaged by them first to Mrs. Russell, and afterwards to the Medford Loan Fund Association, to secure the payment of debts respectively due to them.   The machinery in the workshop was also for a like purpose mortgaged by them to the plaintiff, who had caused such proceedings to be had in relation to it that the right of redemption had become foreclosed prior to the 20th of June 1862, so that he had then acquired an absolute title to the property.   On the 16th of May of the same year the defendant, as president of the Loan Fund Association, and acting in their behalf, entered upon the land, for breach of the condition of their mortgage, to take possession for the purpose of foreclosure, and caused a certificate thereof to be duly made and signed by witnesses and recorded, according to the provisions of the statute and the requirements of law in such cases.   It does not appear to have been shown that the Loan Fund Association, either by the defendant or by any other person, continued to retain possession of the premises after that

time. William Taylor, who was at work regularly in the building, either on his own account or in the service of some third person, was certainly not in the employment of the defendant. And it having been asserted in the presence of the defendant by the plaintiff that his mortgage would hold the engine, boilers and shafting, to which upon the trial the plaintiff relinquished all claim of right, the defendant directed Taylor not to allow any of the machinery to be removed from the building, but, if any such removal was attempted, to give notice thereof to him, and to use no force to prevent it. In giving these directions, the defendant professed to be acting not for himself, but solely on account and in behalf of the Loan Fund Association; and this was so understood by Taylor. Mrs. Russell afterwards, on the 16th of June, took formal possession of the premises under her mortgage, to foreclose the right of redemption; but this fact is immaterial in reference to the question of conversion now to be considered.

On the 20th of June the plaintiff sold all his interest under his mortgage title in the machinery to Pyam Cushing for $1000, and took his promissory note therefor, and gave to him a receipted bill of sale. The next day Cushing went to the mill for the purpose of taking possession of the machinery, which still remained there in the same situation in which it was when possession was taken of the real estate by the Loan Fund Association. He found Taylor there, and told him of his intention to remove the machinery. Taylor forbade the removal, and in answer to an inquiry addressed to him said that he made the objection by the authority of Mr. Curtis. It is obvious that it thus became a very material inquiry upon the trial, whether the refusal of Taylor, upon the demand of Cushing, to deliver the machinery to him, constituted a conversion of it by the defendant.

The defendant requested the court to instruct the jury that, as he was acting merely as the agent of the Loan Fund Association, he could not upon the evidence in the case be rendered liable for the alleged conversion of the machinery. But the court declined to accede to that request; and, instead

of complying with it, instructed the jury that the refusal by Taylor was evidence of such an assumption of control or dominion over the property, to the exclusion or in defiance of the plaintiff's right therein, as would amount to a conversion ; and that the defendant would be responsible, the same as if it was his act, if he was then in possession of the building and machinery, and Taylor, in refusing to allow it to be taken away, was acting under his authority or by his direction.

These instructions, considered only as abstract propositions, do not embrace any erroneous statement of the law ; but in their application to the evidence which had been adduced, and to the questions in issue, they were not free from very serious objection.

In the first place, instead of taking it for granted, as the court appears to have done, that what occurred in the interview on the 21st of June between Cushing and Taylor was an assumption on the part of the latter of the control or dominion of the property, to the exclusion or in defiance of the plaintiff's right therein, the jury should have been advised that they were to consider the proof of what took place on that occasion in connection with all the other evidence in the case bearing upon the question, and determine in view of the whole of it whether there was such a clear and absolute refusal to deliver the property as would constitute a conversion of it. It does not appear that the defendant or Taylor ever in fact used or interfered with the machinery belonging to the plaintiff; and therefore the possession of it, which resulted only from the occupation of the building in which it was placed, involved no violation of his rights. And as he claimed all the machinery, to some of which he had certainly no title, it would be proper to consider whether the direction given to Taylor to allow none of it to be removed, accompanied as it was with the further direction to use no force to prevent it, was anything more than a mere notice that claims in opposition to his would be insisted upon by the association. None of the machinery was attempted to be concealed or removed from the situation in which it had been placed by the mortgagors, and in which the plaintiff had himself left it.

But, in the next place, the instructions in reference to the question whether, if there had been any conversion of the machinery, the defendant was responsible for it, were essentially deficient. There was no evidence produced upon the trial tending to show, nor was it contended, that the defendant had personally done any act by which he had made himself liable to an action in favor of the plaintiff; but it was insisted that he so became liable by the refusal of Taylor to deliver up the property to Cushing when it was demanded by him. It is no doubt true that a party is liable for all acts done by his agent, within the scope of his authority; but, before he can be charged by force of this principle, the fact of agency must first be established. It was, therefore, of the utmost importance that the attention of the jury should have been directed to the question whether Taylor was the agent of the defendant, or of the Loan Fund Association. There was evidence before the jury which, even if it could be thought that its meaning was in any degree uncertain, would still seem to be quite sufficient to have justified them in deducing from it the conclusion that when, in reply to the demand of Cushing, he forbade the removal of the machinery, he was not in the employment of the defendant, or acting at all for him or on his account. It is true that the directions given to him came directly from the defendant; but there was evidence tending to show that he employed Taylor, so far as he was employed at all, not for himself, but for the association, and it was so understood and agreed to by Taylor. If this was so, then Taylor might afterwards have done acts for which the association would be responsible, but, no authority or power having been conferred upon him to do or say anything for or on account of the defendant, he could do none which could affect him, or subject him to any liability. The rule of law upon this subject ought, therefore, when the attention of the court was called to it, to have been particularly explained to the jury; and without such explanation it was certainly erroneous to say that the defendant was responsible for the acts of Taylor, the same as if they had been done personally by himself; and to add, as was done by the presiding judge, that it made no

difference whether, in what he did, he acted for himself or for the association. For it in fact made a very great difference, in respect to his liability, whether Taylor was employed and acted on his account, or merely for and as the servant of the association ; if on account of the latter only, the defendant certainly is not responsible for his acts. See *Hewett* v. *Swift*, 3 Allen, 420.

It was urged by the defendant that the plaintiff could not avail himself of the evidence to show a conversion of the property by the refusal of Taylor to deliver it to Cushing upon his demand, because the whole of that transaction occurred after the property had been sold to Cushing, and before the contract of sale had been rescinded. But this objection cannot be sustained. If the plaintiff had in other respects a right of action when his suit was commenced, he might introduce any competent evidence to show that the defendant had unlawfully converted the property to his own use. A refusal to deliver it to any person who had a right to demand it was evidence tending to prove such conversion, and therefore the plaintiff was rightly allowed to prove the facts which had actually at any time occurred.

If the contract of sale had been rescinded, and the plaintiff was the owner of the property at the time of the commencement of his action, it might be maintained, although the defendant had previously refused to deliver it to Cushing, and had thus made himself liable for its value by conversion of it to his own use. *Pattison* v. *Robinson*, 5 M. & S. 105.

Upon the question concerning the amount of damages to be recovered, the court should have adopted the prayer of the defendant, and have instructed the jury that his having given to the plaintiff notice, after the sale of the premises by Mrs. Russell, that the association had relinquished all claim to the machinery, (which appeared by the testimony of the plaintiff himself,) and the fact that the machinery had never been appropriated to their use, nor moved from the place where it had always been, should be considered by them in mitigation of damages. *Greenfield Bank* v. *Leavitt*, 17 Pick. 1. *Exceptions sustained.*

*W. Brigham*, for the defendant.

*G. O. Shattuck*, for the plaintiff, cited *Pattison* v. *Robinson*, 5 M. & S. 105; *Stephens* v. *Elwall*, 4 M. & S. 259; *Clark* v. *Whitaker*, 19 Conn. 319; *Thorp* v. *Burling*, 11 Johns. 285; *Cranch* v. *White*, 1 Bing. N. C. 414, and 1 Scott, 314; *Perkins* v. *Smith*, 1 Wils. 328; *Judson* v. *Cook*, 11 Barb. 642; *Cram* v. *Thissell*, 35 Maine, 86.