John H. Evans *v.* M. Georgie Miller, Administratrix.

1. Cutting Trees. *By mistake as to boundary line. Right of action. Extent of recovery.*

E. forbade M. to cut any trees on his land, and pointed out to M. what he supposed to be the boundary line between their lands. M. proceeded to cut timber within the boundary of his own land as indicated by E. But, after the timber had been cut and used by M., the lands were surveyed, and it was ascertained that the trees had been felled on E.'s land. E. then sued for the value of his trees, and the Circuit Court instructed the jury in effect that he could not recover, because he had consented to the cutting of his trees. *Held*, that E. did not consent to the cutting, and his mistake as to the boundary did not deprive him of his right to compensation for his trees; but he can only recover their actual value, to be ascertained upon the basis most favorable to M., who took them through a mistake, into which he was partly led by E.

2. Same. *Assumpsit for value of trees. When maintainable.*

Even prior to the operation of sect. 1586 of the Code of 1880, which abolishes all forms of action, an action of *assumpsit* to recover the value of trees cut

and removed from the land of the owner might be maintained where the trespasser had parted with the trees for money or other property, or had mingled them with his own property, or consumed them in use, or changed their form.

ERROR to the Circuit Court of Washington County.

Hon. B. F. TRIMBLE, Judge.

The case is sufficiently stated in the opinion of the court.

*Frank Johnston*, for the plaintiff in error.

1. Evans never consented to the cutting of his trees, in the sense of granting a license therefor; but, on the contrary, the evidence shows that he did not intend that his trees should be taken. And it cannot be said that his mistake as to the boundary line of his land gave a license to Miller to cut the trees, and transferred to him Evans' property therein. I admit that the damages must be restricted to the actual value of the property taken; but I deny that Miller's honest mistake as to the boundary line will exempt him from liability for Evans' property actually taken and used by him. Cooley on Torts, 438; 2 Greenl. on Ev., sect. 622; *Langdon* v. *Bruce*, 27 Vt. 657. Nor can such mistake on the part of Evans work a loss to him of his property. In *Pearson* v. *Inlow*, 20 Mo. 322, a case precisely in point, the plaintiff by mistake led the defendant into error as to the ownership of the timber taken by the latter, but the court held that the mistake did not have the effect of vesting the property in the timber in the defendant, and that he was liable for its actual value.

2. I insist that Evans could waive the tort and sue in *assumpsit* for the value of the trees which were severed from the freehold, taken away, and converted.

"If one commits a tort, or if he wrongfully takes the goods of another and sells them, or otherwise *applies them to his own use*, the owner may waive the tort and charge him in *assumpsit*." 1 Hill. on Torts, 42; 2 Greenl. on Ev., sect. 108. Ordinarily, in cases of tort, the owner can elect to waive the tort and bring *assumpsit*, and the defendant is not allowed

to say he did not promise, or set up his own wrong and fraud in defence of the suit. 1 Hill. on Torts, 42, note 6 ; *Mississippi Central R. Co.* v. *Fort*, 44 Miss. 423. What difference can it make whether the defendant has sold the property and put the money to his use, or has converted and appropriated the property directly to his own use? In either case, the law imposes a liability and implies a promise.

The trees were removed after they were severed from the soil, and thus became *chattels.* Like other chattels taken and converted, recovery could be had in trover, or in an action on the case, or even *assumpsit* for their value would lie, the tort being waived.

*Nugent & McWillie*, for the defendant in error.

It was essential to the maintenance of this form of action to show that the property had been converted into money. Such seems to have been the conclusion of our appellate court in the early case of *O'Conley* v. *City of Natchez*, 1 Smed. & M. 46, which has been recently followed by the clearer and more definite decision in *Mahon* v. *Greenfield et ux.*, 52 Miss. 437. The doctrine announced in these cases is well established in other States, and has long prevailed in the English courts. See *Strother* v. *Butler*, 17 Ala. 733 ; *O'Reer* v. *Strong*, 13 Ill. 688 ; *Smith* v. *Smith*, 43 N. H. 535 ; *Winchell* v. *Noyes*, 23 Vt. 303 ; *Elliott* v. *Jackson*, 3 Wis. 57 ; *Willet* v. *Willet*, 3 Watts, 277 ; 1 J. J. Marsh. 543 ; *Sanders* v. *Hamilton*, 3 Dana, 552 ; *Stockett* v. *Watkins*, 5 Gill & J. 326 ; *Morrison* v. *Rogers*, 3 Ill. 317 ; *Balch* v. *Patten*, 45 Me. 41 ; *Jones* v. *Hoar*, 5 Pick. 285.

In the case last cited, the English authorities are reviewed at length in the opinion of Mr. Justice Strong, of the Court of Common Pleas, annexed as a note to the reported opinion. In this opinion, attention is called to an exception that the English courts had occasionally made to their rule, refusing to entertain suits in *assumpsit* in this class of cases. The exception is, when the wrong-doer has died ; the administrator being held not liable in trover when the conversion occurred in the

lifetime of his intestate. Although the action of trover is an action of tort in form only, the substance being a question of property rights, inasmuch as the appropriate plea was that of not guilty, it was held not to survive against the representative of the tort-feasor after his death. This view of the common law does not seem to have been free from doubt or dispute in England, and has not been adopted in America. *Hamly* v. *Trot*, 1 Cowp. 371; *Lock* v. *Garrett*, 16 Ala. 698; *Decrow* v. *Moore*, 1 Hayw. (N. C.) 21; *Clark* v. *Keenan*, 1 Hayw. (N. C.) 308; *Avery* v. *Moore*, 1 Hayw. (N. C.) 362.

It will be observed that the reason for the exception as to suits against the representatives of deceased persons rests upon the idea that suits in trover are not maintainable against them. Now, it is doubtful whether that idea was fully sanctioned in England, and, so far as we can ascertain, it never has been in America; but, even were it well established here as a principle of the common law, it would be superseded by our statute (sect. 1176, Code 1871), which provides that executors and administrators " shall be liable to be sued, in any court of law and equity, in any personal action which might have been maintained against the deceased." The reason for the exception to the rule being removed, the exception should go with it.

Certainly, when the action of *assumpsit* is resorted to, the proof must disclose the conditions essential to a recovery in that form to entitle the plaintiff to a judgment. *Indebitatus assumpsit* can only be for money. The trees were never converted into money; and the plaintiff, seeking neither their restoration nor damages for the trespass, proceeds upon the theory of a contract to recover their value. The view of the case that we contend for is well illustrated by the difference in the measure of the plaintiff's recovery in the two forms of action. In trover he can recover the full value of the goods though the sale brought less; in *assumpsit*, for only what they brought. *King* v. *Leitch*, 2 Term Rep. 144.

CHALMERS, C. J., delivered the opinion of the court.

John A. Miller, now deceased, by mistake cut trees upon Evans' land, and used them in erecting houses and fences on his own land. Evans pointed out to the employees of Miller the supposed boundary line which separated the land of the one from that of the other. A subsequent survey having disclosed the true line, this action of *assumpsit* was brought by Evans against M. Georgie Miller, administratrix of John A. Miller's estate, to recover the value of the trees cut. The court below instructed the jury substantially that no recovery could be had, because of Evans having consented to the felling of the trees, and because, the timber not having been by Miller converted into money, *assumpsit* could not be maintained for its value, but that Evans must sue in trespass or trover.

Neither of these propositions was correct under the circumstances of the case.

Evans did not consent to the felling of his trees. On the contrary, he distinctly forbade Miller's employees to trespass beyond what he supposed to be the true line. That he was mistaken as to where the line was, no more deprived him of the right to claim compensation for his trees than to claim ownership in the soil from which they were taken. Consent given to the taking, or acquiescence in the taking, of that to which one supposes that he has no title, will not prevent a recovery of the thing taken, when the true title is subsequently discovered. It will acquit the party taking from all claim for damages, direct or consequential, but it will not divest title, nor prevent the owner from recovering the actual value of his property.

In the case at bar, Evans is entitled to recover the actual value of his trees, to be estimated upon the basis most favorable to Miller, who took them through a mistake into which he was partly led by Evans.

The action of *assumpsit* can be maintained though there

was no actual conversion of the trees into money. It is held by many courts of high authority that a tort can only be waived and an action *ex contractu* maintained where the tort-feasor has converted into money the proceeds of his wrongful act, and has thus subjected himself to an action for money had and received.

An intimation of this sort was thrown out in *O'Conley* v. *City of Natchez*, 1 Smed. & M. 46, and again in *Mhoon* v. *Greenfield*, 52 Miss. 440, and certainly it is supported by many adjudicated cases in England and America. A more liberal, and, we think, a more sensible rule, is laid down by the later text-writers, and sustained by many courts, to the effect that the tort may be waived and *assumpsit* maintained whenever the property taken has been converted either into money or into any other beneficial use by the wrong-doer, and especially where it has been so applied to his use as to lose its identity. Cooley on Torts, 95, and cases cited; 2 Greenl. on Ev., sect. 108, note 5; Hill. on Torts, 42; 1 Hill, note *a*.

It is impossible to perceive any valid objection to this doctrine.

So long as the trespasser retains, in its original shape, the property taken, he may logically deny that he holds it under a contract, and demand that he be proceeded against in tort, and that the tort be established against him; but when he has parted with it, either for money or other property, or when he has mingled it with his own, consumed it in its use, or changed its form, he should not be permitted to deny the assumption to pay its value which the law imputes from his method of dealing with it. It is, indeed, greatly to his advantage to be sued in *assumpsit* rather than in trespass or trover, since in the former action he escapes all claims for damages, obtains the right of set-off, and can be held only for the actual value of the property.

The provisions of sect. 1536, Code of 1880, abolishing all forms of action, by the provision that "it shall be no objection to maintaining any action that the form thereof should

have been different," would render any future discussion of this question unnecessary; but, this case having been tried before the adoption of that Code, we dispose of it without reference to its provisions.

Reversed, and new trial awarded.