### HARRIET A. TRUBEE *vs.* GEORGE N. MILLER.

A disseisee who has recovered possession of the premises by any lawful means may maintain trespass for mesne profits against a party who has occupied the premises as a tenant of the disseisor, although he was ignorant of the disseisee's claim of title and has in good faith paid rent to the disseisor.

The disseisor can not give to any person occupying under or taking title from him, any better rights than he had himself.

Trespass will lie for mesne profits upon the fiction of law that the disseisee after re-entry has been in continuous possession during the period of the disseisin.

TRESPASS for mesne profits; brought to the Superior Court in Fairfield County. The following facts were found by a committee:

On the 24th of October, 1873, Stephen H. Alden, who then owned in fee and was in possession of the premises described in the declaration, which were a country seat and farm in Westport in this state, known as "Compo Place," executed and delivered to the plaintiff, Harriet A. Trubee, who was his daughter, for the consideration of one dollar, a conveyance of the same in fee, the deed being recorded on the 27th of October, 1873, in the land records of Westport.

Mrs. Trubee took possession of the premises on the 24th of October, 1873, and Mr. Alden continued to occupy the same with her subsequently thereto and until about the 15th

day of February, 1874, when she went with him to the city of New York, intending to remain there a few weeks and then return.

On the 2d of April, 1874, Stephen H. Alden executed and delivered to Mrs. Georgia V. Alden a warranty deed of Compo Place, for the consideration expressed in the deed of $50,000. The only real consideration however was a mortgage, executed at the same time, of the same premises by her to him, for the amount of the purchase price mentioned in the deed, which mortgage contained a stipulation that the mortgage debt therein described was not to be paid any further than it could be obtained from the mortgage. This deed was taken by the said Georgia with full knowledge of all the facts above stated with regard to the conveyance of the property by Mr. Alden to Mrs. Trubee, and that she claimed the property as her own under that deed. The mortgage from Georgia V. Alden to Mr. Alden was never left for record. The deed from him to her was recorded April 4th, 1874.

On the 3d day of April, 1874, and during the temporary absence of Mrs. Trubee from Compo Place, the said Georgia V. Alden entered and took possession of the premises without her knowledge or consent, and continued in possession, by herself and her tenants, until the 16th day of January, 1877; and during the whole of that period Mrs. Trubee remained in Brooklyn in the state of New York.

On the 10th of July, 1874, Georgia V. Alden brought a petition in equity to the Superior Court in Fairfield County, returnable to the August term following, praying that the deed from Mr. Alden to Mrs. Trubee might be set aside and declared void, and that the title to the premises might be established in her, the said Georgia V. To this petition Mrs. Trubee filed an answer and cross bill, setting forth her title to the property, and that the deed from Mr. Alden to Georgia V. Alden was fraudulent and void, and constituted a cloud upon her title, and praying that the court decree that she should execute to her a quit-claim deed of the premises, or that the deed from Stephen H. Alden to Georgia V. Alden

be set aside and possession of the premises be decreed to her, and that execution for such possession should be issued.

Upon the petition, answer and cross bill, such proceedings were had, that after full trial the Superior Court, (the case having been taken to the Supreme Court of Errors by Georgia V. Alden upon motion in error,) on the 3d day of January, 1877, passed its decree that the deed from Stephen H. Alden to Georgia V. Alden, dated April 2d, 1874, should be set aside, and that the full title to the premises should be vested in Mrs. Trubee, and the deed of Mr. Alden to her, dated October 24th, 1873, should be fully confirmed, and that she was entitled to the immediate possession of the premises, and that an execution of ejectment therefor should be issued.

Pending this petition, on the 24th of November, 1874, Mrs. Trubee brought her action of ejectment against, and on the same day caused the same to be legally served upon, Mrs. Alden, to the Superior Court for Fairfield County, at its December term, 1874, therein demanding the seizin and possession of the premises; and upon this action such proceedings were had, that on the 5th day of April, 1877, judgment thereon was rendered in her favor against Mrs. Alden, and execution thereon was issued.

Nominal damages only were adjudged to Mrs. Trubee in the action, a remittitur of which was filed therein by her, and the same were never demanded or received by her.

The execution was duly served by a proper officer, who caused Mrs. Trubee to be put into possession of the premises and made his return thereon according to law.

On the 11th of May, 1874, Mrs. Alden leased to George N. Miller, the defendant, that portion of the premises known as the mansion house, and certain portions of the outbuildings connected therewith, and certain portions of the premises immediately surrounding the same, from June 1st, 1874, to November 1st, 1874, as a summer residence; he being then and ever since a resident of the city of New York. Miller occupied the premises during that period, at a rent of $2,500, which was fully paid by him to Mrs. Alden. Subsequently,

on the 25th of May, 1875, Mrs. Alden again leased to Miller the same premises as a summer residence, which he occupied from the 1st of June until November 1st, 1875, at a rent of $2,500, which was fully paid by him to Mrs. Alden. And on the 24th of May, 1876, Mrs. Alden again leased the premises to Miller, which he occupied from the 1st of June to November 1st, 1876, at a rent of $2,000, which was fully paid by him to her. This rent was a fair and reasonable compensation for the use of the premises occupied by Miller, for the periods of his occupancy.

Mrs. Alden continued in the possession of the whole of the premises, from April 3d, 1874, until the 16th day of January, 1877, except when Miller was in the occupancy of the part mentioned, taking the rents and profits to herself. Miller had no actual knowledge of the condition of the record title, and took no pains to inquire in whom the title was, but knew in July, 1874, that the title and right to the possession of the premises were in dispute, and that there was a litigation between Mrs. Alden and Mrs. Trubee. No claim was made other than might arise upon the facts stated, and no demand was made by the plaintiff on the defendant for the use and occupation, until after she was placed in possession of the premises. Miller was never made a party to any litigation between Mrs. Trubee and Mrs. Alden.

Mrs. Trubee, on the 2d day of June, 1877, went into possession of the premises, and has ever since to the present time held full and peaceable possession thereof, except for a few hours when put out by force; and she has ever since been a resident of the state of Connecticut.

The plaintiff claimed that she was entitled to recover the sum of $7,000, for the rent, or for the use and occupation of the premises and the interest thereon, while the defendant claimed that she was not entitled to recover any sum whatever from him.

Upon these facts the case was reserved for the advice of this court.

*W. K. Seeley* and *E. W. Seymour*, for the plaintiff.

1.   The remedy we have adopted is the right one.   Trespass for mesne profits lies after a recovery in ejectment, and can be brought only after such a recovery.   1 Chitty Pl., 177; Tyler on Ejectment, 840; Hilliard on Rem. for Torts, book 2, sec. 152; Sedgw. on Damages, 6th ed., 135; *Morgan* v. *Varick*, 8 Wend., 587, 591; *Leland* v. *Tousey*, 6 Hill, 333. And only nominal damages are ordinarily recovered in ejectment, and these are generally remitted, as we have done here. 1 Swift Dig., 509; 1 Chitty Pl., 192; Sedgw. on Damages, 6th ed., 133; *Van Allen* v. *Rogers*, 1 Johns. Cas., 281.

2.   The action of trespass for mesne profits will lie against a tenant of the disseisor after judgment in ejectment.   This principle was established early in English jurisprudence, (*Holcomb* v. *Rawlins*, Cro. Eliz., 540,) but though called in question by Lord Coke, (*Liford's case*, 11 Coke, 51, and *Menvill's case*, 13 Coke, 21,) has yet been adhered to in all the other English cases, and must be regarded as thoroughly established in that country.   *Doe* v. *Whitcomb*, 8 Bing., 46. It is also established in the state of New York.   *Jackson* v. *Stone*, 13 Johns., 448, (quoted with approval by WILLIAMS, C. J., in *Gould* v. *Stanton*, 16 Conn., 20;) *Morgan* v. *Varick*, 8 Wend., 587, 592.   Also in Massachusetts.   *Emerson* v. *Thompson*, 2 Pick., 473, 486; *Washington Bank* v. *Brown*, 2 Met., 293, 295.   Also in Pennsylvania.   *Jeffries* v. *Zane*, 1 Miles, 287; *Storch* v. *Carr*, 28 Penn. St., 135.   Also in North Carolina.   *Bradley* v. *McDaniel*, 3 Jones Law R., 128. Also by the Supreme Court of the United States.   *Green* v. *Biddle*, 8 Wheat., 75.   The same doctrine is laid down in the text books.   Tyler on Ejectment, 840; Hilliard on Rem. for Torts, book 2, sec. 153; Sedgw. on Damages, 6th ed., 143. The state of New Jersey seems to be the only one in which the contrary is held.   The only case there is that of *Sanderson* v. *Price*, 1 Zabr., 637, which was decided by a divided court, two judges dissenting.

3.   We were not bound to give the defendant notice of our claim of title.   We had a warranty deed on record.   We had also an action of ejectment pending in the court.   These

facts, if they do not constitute notice, were enough to put him upon enquiry, which is sufficient. *Booth* v. *Barnum,* 9 Conn., 286; *Sumner* v. *Rhodes,* 14 id., 139; *Rowan* v. *Sharp's Rifle Co.,* 29 id., 325; *Boswell* v. *Goodwin,* 31 id., 84; *Hunt* v. *Mansfield,* id., 490; *Hamilton* v. *Nutt,* 34 id., 511; *Post* v. *Clark,* 35 id., 342; *Williamson* v. *Brown,* 15 N. York, 359; *Hinde* v. *Vattier,* 1 McLean, 110.

*J. B. Curtis* and *N. R. Hart,* for the defendant.

1. The plaintiff cannot recover in this form of action, which is trespass *quare clausum fregit.* To recover in it the plaintiff must be at the time of the entry in actual possession, or else must show an actual exclusive possession, or a title in connection with the fact that no one else was in actual exclusive possession. *Wheeler* v. *Hotchkiss,* 10 Conn., 225; *Payne* v. *Clark,* 20 id., 30; *Church* v. *Meeker,* 34 id., 421; *Sutton* v. *Lockwood,* 40 id., 318; *Cummings* v. *Noyes,* 10 Mass., 436; *Allen* v. *Thayer,* 17 id., 302. The plaintiff has in effect abandoned the ordinary mode of redress by seeking damages against the actual wrong-doer in an action of ejectment, and adopted the English mode of remitting damages, and seeking redress in an action of trespass, and that against a person as to whom she never was in possession. 1 Swift Dig., 510. We do not say an action of trespass *quare clausum* will not lie to recover mesne profits, but that it cannot be brought against this defendant, it being conceded that he was a tenant under another person, in possession at a time when the plaintiff was not in possession.

2. The defendant has already paid to the party in possession his rent. No claim or demand was made upon him for it until this suit was brought, after he had occupied for three years, and after his lease had for the third year terminated. The only relation sustained by Miller to the property was that of a tenant to the party in possession—Mrs. Alden. He never was a tenant of the plaintiff, and never entered her close, and never took the profits to himself, and never committed any trespass. Being a lessee under a lease from one in possession, claiming title, when the lessor is afterwards

ejected by title paramount, he is not liable to the real owner in an action of trespass for mesne profits. Bac. Abr., *Trespass G,* 38; *Emerson* v. *Thompson*, 2 Pick., 484, 491; *Case* v. *De Goes*, 3 Caines, 261; *Campbell* v. *Arnold*, 1 Johns., 511; *Tobey* v. *Webster*, 3 id., 461; *Sanderson* v. *Price*, 1 Zabr., 637. By the fiction of the.law the disseisee is supposed to have had the freehold in him during the disseisin, but this fiction does not obtain where the party against whom mesne profits are claimed holds under a grant. *Liford's case*, 11 Coke, 51: *Menvill's case*, 13 id., 21; 1 Washb. R. Prop., book 1, ch. 5, sec. 3. The only way Miller can be made a trespasser is by relation—by putting him in Mrs. Alden's place; but the law will not do this to advance a wrong, or to defeat collateral acts which concern strangers. *Case* v. *De Goes*, 3 Caines, 262.

3. ˙ The plaintiff seeks to recover rent for the second time from Miller; it was perfectly practicable to have obtained it, or certainly to have prevented the payment of it to Mrs. Alden; at least, notice could have been given, which would have warned him of Mrs. Trubee's claim. Nothing could have been easier than to have given him notice of the claim; he would then have been put upon inquiry, and on investigation have taken such measures, by bill of interpleader or otherwise, as would have protected him in his payment. These considerations derive additional force as a defense to this action, from the fact that the action for mesne profits is an equitable one, and any equitable defense may be pleaded. *Murray* v. *Governeur*, 2 Johns. Cas., 438; *Ewalt* v. *Gray*, 6 Watts, 427. If it be that a tenant holding under a landlord in possession can be made to pay a double rent on account of his landlord's inability to respond in damages, as a penalty for a wrong to which he is a stranger, there is little safety for tenants, and certainly no equity in the rule that subjects them.

4. It would seem, on principle, that a tenant is not bound to look beyond his landlord's possession for a three months' lease. The right of possession is all that the lessee takes; he takes it independent of his lessee's title, provided

possession can be peaceably transferred. Under such cir-
cumstances how can there be trespass, which is a possessory
action? *Tobey* v. *Reed,* 9 Conn., 223. If the action is to
give a remedy for a wrong committed, what wrong did Miller
commit? Miller's lease is for less than a year—it is a mere
chattel interest. Had he purchased crops, could the plaintiff
maintain an action for repayment? If a portion of the use
is purchased by Miller, is there any better reason why he
should pay for it twice? Would the allegation by Miller of
Mrs. Trubee's title be a defense to a suit by Mrs. Alden for
rent? Obviously not. The rule of law which estops the
tenant from denying the title of his landlord in an action for
rent, and which is not a technical one, but is founded in public
convenience and sound policy, operates effectually in prevent-
ing a third party claiming title to the leasehold estate from
afterwards claiming and bringing an action for mesne profits
against the tenant. Taylor's Land. & Ten., §§ 629, 707;
*Camp* v. *Camp,* 5 Conn., 300. The tenant being estopped
by law from denying the title of his landlord, can only justify
the non-payment of rent in case he is disturbed or evicted by
his landlord or some other person having paramount title.
Taylor's Land. & Ten., § 372; *Fletcher* v. *M'Farlane,* 12
Mass., 46; *George* v. *Putney,* 4 Cush., 351; *Kerr* v. *Shaw,*
13 Johns., 236; *Lansing* v. *Van Alstyne,* 2 Wend., 564. The
defendant not having been disturbed in, or evicted from, his
tenancy at any time during its continuance, either by Mrs.
Alden or the plaintiff, was by the rule above mentioned com-
pelled by law to pay his rent to Mrs. Alden, and to her alone;
and having thus paid it, such payment is a full and effectual
bar to the present action.

5. The action of trespass for mesne profits is a mere
auxiliary to ejectment. It cannot be sustained against others
than the wrong-doer ejected, and it lies to recover damages
only for the disseisor's wrongful acts. Miller's not being
made a party to the ejectment proceedings exempts him from
liability. *Leland* v. *Tousey,* 6 Hill, 328; Adams on Eject-
ment, ch. 13; Runnington on Ejectment, § 12. Miller might
have been made a co-defendant to the ejectment suit, or such a

suit might have-been brought against him alone, and in either case he would have been liable in a suit for mesne profits. But the plaintiff elected to pursue her remedy in ejectment solely against Mrs. Alden; she is, therefore, confined to such damages for mesne profits as can be recovered from Mrs. Alden.

PARDEE, J.   The defendant contends that this action is trespass *quare clausum fregit;* that possession by the plaintiff at the time of the injury is a pre-requisite to the maintenance of that action; and that this plaintiff was barred from possession during the entire time of occupancy by the defendant, and that therefore she must fail in her suit.

But, while in form this is an action of trespass, being consequent upon and supplemental to the action of ejectment, and therefore necessarily partaking of its characteristics, in effect it is to recover the rents and profits of the estate, and although the right to institute it was in suspense until the plaintiff had regained actual possession, the law then supposes the freehold to have been continuously in the rightful owner by a kind of *jus postliminii*, and gives her the action for the damages or mesne profits during the time of tortious dispossession; thus avoiding the application of the rule cited by the defendant and attaining justice through a fiction.

It was within the power of the plaintiff to include mesne profits in the judgment in the action of ejectment; and it was equally within her power to take only nominal damages for the trespass, enter a remittitur, and institute an action against the defendant for such part of the profits accruing during the time of the disseisin as he actually took to himself.

. This action rests upon the plain principle that he who occupies the land of another shall compensate the owner therefor, even if he occupied by virtue of a lease from, and paid rent to, one who was apparently in possession claiming title, and whom he in good faith, but mistakenly, believed to be the rightful owner.   For, as between two persons, equally without fault, each should bear the loss or risk of loss resulting from his own mistake.

This principle had judicial recognition at least as early as *Holcomb* v. *Rawlins*, Cro. Eliz., 540, determined about 1596. That was trespass *quare clausum fregit;* the defendant pleaded "that, long before, Thomas Clerk was seised in fee and let to him for years, and gives color to the plaintiff; the latter replied that he was seised until by the said Thomas Clerk disseised, who let to the defendant; that the plaintiff afterwards re-entered and the trespass mesne betwixt." The defendant demurred; judgment for the plaintiff; the court saying that by his re-entry "he is remitted to his first possession, and as if he had never been out of possession; and then all who occupied in the meantime, by what title soever they come in, shall answer unto him for their time; as if a disseisor had been disseised by another, the first disseisee re-enters, he shall in trespass punish the last disseisor; for otherwise it would be mischievous unto him, for after his re-entry he shall have no remedy for his mesne profits. And it is not to be doubted but that the disseisee after his re-entry shall punish the second disseisor and the servant of the first disseisor who occupied under his master; which was not denied by any; and by the same reason he shall punish him who comes in by title, for that is now as a trespass done unto himself."

*Doe* v. *Whitcomb*, 8 Bingham, 46, decided in 1831, was trespass for mesne profits. There was a judgment in ejectment against Simon Payne; the plaintiff had seisin by execution; the defendant had occupied the premises for a year, having been let into possession by an agent of Payne, to whom he had paid the rent. It was objected that the defendant was not thereby sufficiently connected with Payne to render him liable to this action for mesne profits. The verdict was taken for the plaintiff, with leave for the defendant to move the court on the point. *Tindal, C. J.* "We entertain no doubt on the case. The evidence was, a judgment in ejectment against Simon Payne; the execution of a writ of possession thereon; that the defendant came in under Simon Payne and had possession for a certain time, and paid rent to a certain amount. The only objection to the verdict is, that the

defendant is a stranger to the record in ejectment against
Payne. The answer is, that the defendant came in under
Payne while the judgment in ejectment was pending, and
that he cannot hold by a better title than Payne."

*Emerson* v. *Thomson et al.*, 2 Pick., 473, was trespass for
mesne profits. The plaintiff having recovered judgment
against the administrators *de bonis non* of the estate of John
Harris, deceased, upon March 30th, 1818, levied his execution
upon certain land, and immediately made a lease thereof to
Brown, who was already in possession as a purchaser from
the administrators. Before the levy of the plaintiff's
execution W. Thompson, the father of the defendants, had
recovered judgment for the premises in a writ of *entry sur
disseisin* against Brown, and on May 8th, 1818, he executed
his *habere facias seisinam* and expelled Brown, then in pos-
session under the plaintiff's lease. W. Thompson died
November 16th, 1818; the defendants were his heirs at law
and administrators upon his estate. On May 20th, 1819, in
his latter capacity, W. Thompson, the defendant, leased the
premises for one year; and it did not appear that he or any
other of the defendants had at any time before entered
thereon after the death of their ancestor. On May 21st,
1819, the plaintiff brought his writ of ejectment demanding
seisin of, &c., "into which the said defendants have not entry
but by W. T., &c., deceased, who thereof unjustly disseised
the plaintiff, and from whom the same descended to the
defendants, who still unjustly withhold the same," &c.; plea
"that they never disseised in manner and form." Verdict
of judgment for the plaintiff, with writ of seisin duly exe-
cuted. Held—"that the heirs were liable in trespass for the
mesne profits accruing after the commencement of the writ
of entry, (and so, *it seems*, they would have been, if they had
been purchasers,) but not for those accruing between the
descent cast and their entry. As to those accruing between
their entry and the commencement of the writ of entry;
*Quære.*"

In *Green* v. *Biddle*, 8 Wheaton, 1, it is said that "nothing
in short can be more clear upon principles of law and reason,

than that a law which denies to the owner of land a remedy to recover the possession of it when withheld by any person, however innocently he may have obtained it, or to recover the profits received from it by the occupant; or which clogs his recovery of such possession and profits by conditions and restrictions tending to diminish the value and amount of the thing recovered, impairs his right to and interest in the property." In *Storch* v. *Carr*, 28 Penn. St. R., 135, it is said that "intermeddling with real estate by putting a party in possession and afterwards making a written lease of it to other parties, makes the parties so interfering liable with the parties occupying the premises for mesne profits." In *Bradley* v. *McDaniel*, 3 Jones's N. Car. Law R., 128, it is said that "one coming in as lessee to the defendant in an action of ejectment during the pendency of that action, is bound by the proceedings had therein, and consequently is liable to an action for mesne profits." In *Judson* v. *Stone*, 13 Johns., 448, it was held "that when during the pendency of an action of ejectment the defendant gives up the possession to a third person, and afterwards the plaintiff recovers judgment, such third person is liable for the mesne profits," and in *Morgan* v. *Varick*, 8 Wend., 587, "that a disseisee, after recovering possession, may maintain trespass for mesne profits against the disseisor, or his servants, or a stranger acquiring title from the disseisor."

It is true that the principle has not had the unanimous support of courts in England or this country. In *Liford's case*, 11 Coke, 51, (1615,) there is a dictum of Lord *Coke, C. J.*, to the effect that the disseisee after re-entry cannot recover in an action for mesne profits against the feoffee or lessee, or disseisor of the first disseisor, giving as reasons that "this fiction of the law, that the freehold continued always in the disseisee, shall not have relation to make him who comes in by title a wrong-doer *vi et armis;*" that "it is to be presumed that the feoffee has given consideration or recompense to the disseisor, and that the lessee has paid rent to him, or other consideration, and therefore in reason the disseisor is to be charged with the whole;" and in respect to

the disseisor of the disseisor that the "fiction of law as to the action extends only to the first disseisor, and if the disseisee should punish the second disseisor he would be twice charged." Lord *Coke* refers to several ancient cases in support of his opinion, acknowledging that "there was a great variety of opinions in the books" upon the point. See *Symons* v. *Symons*, Hetley, 66; Viner's Abr., *Trespass*, R. 4, pl. 5; Bro. Abr., *Trespass*, pl. 35; Keilway, 1, pl. 2; see also *Sanderson* v. *Price*, 1 Zabriskie, 637. In 2 Rol. Abr., 554, *Trespass per relation*, the law is declared to be as laid down in *Holcomb* v. *Rawlyns*, supra, in Gilbert's Tenures, 47, 50, and in Comyn's Digest, *Trespass*, B. 2. Buller in his Nisi Prius, 87, speaking of the doctrine of *Liford's case*, says "it may admit of doubt, for there are cases to the contrary, and the reason of the law seems to be with them." In *Emerson* v. *Thompson*, supra, *Wilde, J.*, says:—"So far therefore from feeling myself bound by *Liford's case* as an authority, I am of opinion that the weight of authority is opposed to the decision in that case; and that this is the opinion also of the English courts may be inferred from their well known practice in relation to the action for mesne profits consequent to a recovery in ejectment."

The record finds that in the month of July, 1874, the defendant had actual knowledge that there was litigation between Georgia V. Alden and the plaintiff as to the title to, and right to the possession of, the premises, and it is not found that he had previously paid any portion of the rent reserved for the term. Having taken no precautions against the results of a possible judicial determination that the person under whom he held had no title to the premises, and no right of possession thereof, and could confer none upon him, he is not now to be heard to complain that he has paid rent to her. Upon knowledge it was for him to be diligent in enquiry as to his rights and duties, and in protecting himself against double payment. It was not his privilege simply to pay, and then transfer all risk of loss from himself to the plaintiff.

It is not an answer to her demand that he has come under

an obligation from which he cannot relieve himself to pay rent to the disseisor; that was his voluntary act and his misfortune. Neither in law nor equity are the rights of the plaintiff, she being without fault, to be conclusively determined thereby.

Moreover, the plaintiff had placed upon record a duly executed deed of the premises to herself. From the date of such record the defendant had constructive notice as to the state of the title; from that date the plaintiff was entitled to the protection given, and the defendant was subject to the limitations imposed thereby. His payment of rent to a disseisor was without excuse or any element of equity; it has not ignorance for its justification.

But we do not think it essential to the plaintiff's right of recovery that the defendant should be chargeable with notice of her claim at the time he leased the premises of Mrs. Alden, nor that he paid the rent to his lessor in circumstances that should have put him upon enquiry, nor indeed that the plaintiff should have brought an action of ejectment to recover possession; but we base our decision upon the broad principle, clearly supported by the authorities, that a disseisee who has recovered possession of the premises from the disseisor, in whatever lawful mode, may when in possession maintain trespass for mesne profits against a tenant of the disseisor or any one else who has occupied under him, for the use and occupation of the premises, whether such occupant had any knowledge of the claim of the disseisee or had not.

It being found that the sum of $2,500 will compensate the plaintiff for the use and occupation of her land for each of the years 1874 and 1875, and $2,000 for the year 1876, the Superior Court is advised to render judgment in her favor for the aggregate of those sums, with interest upon each from the end of the term for which it is payable.

In this opinion the other judges concurred.