ALLIANCE TRUST CO. v. NETTLETON HARDWOOD CO.

1. NOTICE. ˙ *Record of deed. Purchaser of timber.*

A person who buys standing timber, even if the seller be in posses-
sion, is bound to take notice of a deed from the seller then re-
corded, conveying the land to another without reservation of the
timber.

2. SAME. *Lis pendens.*

The pendency of a suit concerning lands is notice to the purchaser of
the timber thereon, from a party to the suit, of the rights of com-
plainant; and such notice, before the code of 1892 became opera-
tive, was effected by the mere pendency of the suit.

3. DISSEIZEE. *Re-entry. Right to sue. Stranger.*

The true owner of land, who has been dispossessed, may, after re-
entry, maintain trover or trespass *de bonis asportatis*, for trees cut
from his land while he was out of possession, and he may so sue
the disseizor, his vendees, or strangers.

4. PLEADING. *Hilary rules. Not guilty.*

Hilary rules of pleading are not in force in this state, and a plea of
not guilty in trespass does not admit possession; and it does not,
in trespass *de bonis asportatis* or trover, admit plaintiff's title.

FROM the circuit court of Lee county.

HON. NEWNAN CAYCE, Judge.

In 1890, S. H. Taylor and wife executed a deed of trust on
lands to secure a debt, which was foreclosed in 1891, and the
land was purchased by appellant. The land, however, was
sold under an execution, after the making but before the fore-
closure of the deed in trust, and was purchased thereunder by
E. B. K. Taylor. This execution sale was vacated by a suit
in equity, instituted in 1892 by appellant against E. B. K.
Taylor and others, and the decree setting it aside was affirmed
by the supreme court. *Taylor et al. v. Alliance Trust Co.*, 71

Miss., 694.   Pending said suit, the trees were cut for which the present action was instituted.

Plaintiff's evidence showed, or tended to show, that defendant went on to the land and cut the trees pending the equity suit, and after plaintiff's deed and the deed of trust were recorded.   Defendant did not deny getting the trees, but claimed to have purchased them from E. B. K. Taylor, who was at the time in possession of the land, and denied actual notice of the deeds and of the equity suit.   It is not necessary to an understanding of the legal questions decided, that the instructions, referred to by numbers in the opinion, should be given.   The plaintiff had regained possession of the land when this suit was begun.

*William D. Anderson*, for appellant.

The court should have instructed the jury to find for the plaintiff, for, admitting everything to be true which the defendant's testimony tended to establish, and still the plaintiff's case was made out.   There is no conflict in the testimony as to these facts: That, when the logs in question were cut off of the plaintiff's land, the plaintiff was the true owner of the land; that the defendant knew the logs were cut off of the land; that the defendant got the logs and used them; that the plaintiff had regained possession of the land at the time this suit was brought. Now, on this state of facts, what was there for the jury to pass on in the case except the value of the logs taken?   The question of good faith on the part of the defendant, or Taylor, or anyone else, in reference to the ownership of the land and the logs, had nothing whatever to do with the matter.   The question was, who really did own them?   The purchaser had to look to the title of the seller and see that he was getting a good title.

*Gilleylen & Leftwich*, on same side.

The first count in this declaration is technically trespass, the second is for debt, waiving tort, the third for trover and con-

version. Now, the question of the possession of the land can only arise under the first count. There was no demurrer. The only pleas which are to all the counts in the declaration are not guilty and *nil debet;* the first plea alone applying to the first count. Under these pleas the possession of the *locus in quo* at the time of the trespass by the plaintiff cannot be denied by the evidence on the trial, for these pleas admit the possession of the plaintiff. Chitty on Pleading, p. 520 (10 American Edition); *Ostram* v. *Potter*, 62 N. W. Rep., 170. When the disseizee regains possession, he can maintain his action for damages suffered between the disseizen and re-entry. *Emrich* v. *Ireland*, 55 Miss., 390. As to the count for trover and conversion, possession of the realty was not necessary; plaintiff only had to. have the right of possession—the conversion is the gist of the action. 4 Minor's Insts., 487–489; *Ib.*, 389–491. If the land was plaintiff's when the trees were cut (and that has been fully adjudicated, 71 Miss., 694), the trees still belong to the owner of the land after they are cut. *Harris* v. *Newman*, 5 Howard, 654. Trover may be brought for the value of a house which was a fixture, removed from the land of another. *Stillman* v. *Hamer*, 7 Howard, 421. Trees are fixtures or part of the realty before they are severed. *Harrell* v. *Miller*, 6 George, 700. The defendant cannot claim want of notice, if notice was necessary, for the deed of appellant was of record. Taylor's deed was also on record, but it was a sheriff's deed, under a satisfied judgment, and was therefore void as defendant is charged with knowing. *Taylor* v. *Alliance Trust Co.*, 71 Miss., 694. Defendant had constructive notice. Notice by *lis pendens* defendant had also, for suit had been brought by appellant for the land when appellee got the trees. *Chaffe* v. *Patterson*, 61 Miss., 28; *Allen* v. *Poole*, 54 Miss., 323.

*W. R. Harper*, for the appellee.

It is first contended by counsel for appellant that the pleas

did not put at issue its possession at the time of the wrong. Chitty, 520, is cited to sustain this position.    But counsel failed to observe that Chitty is then writing of the state of the law in England "since the recent rules," referring to certain rules of court adopted at Westminster.    It is clear that defendant never entered the close or authorized anybody to go on the close and cut timber.    It only bought timber cut on the close when delivered to it miles away.

If appellant recovers, it must be, then, only for value of the trees converted by it upon the counts of trespass *de bonis asportatis* and trover.    But we say that these two forms of action cannot be maintained against defendant on the facts of the case here presented.    We admit the doctrine laid out in *Emrich* v. *Ireland*, 55 Miss., 370, that he may maintain an action of *quare clausum fregit* against the disseizor for damages to the close intermediate the disseizin and re-entry, because, by a legal fiction, his possession is made to relate back for that particular purpose, but for no other.    *Brothers* v. *Hurdle*, Ired., 490.

WHITFIELD, J., delivered the opinion of the court.

That the appellant is the real owner of the land from which the trees were cut, whose actual value is sought, in this suit, to be recovered, and had title, was settled in *Taylor* v. *Trust Co.*, 71 Miss., 694 (15 South., 121).    The declaration in this case contains three counts—trespass *quare clausum fregit*, trespass *de bonis asportatis*, and trover.    The plea of not guilty was interposed to all these counts, as was also the plea *nil debet*.    It is not disputed that the appellee got the timber from Taylor, who had no title, and has converted it to its own use.    The trees were cut by employes of the appellee, acting, as appellee claimed, as Taylor's agents.    It is shown, also, that, when cut, the deed of appellant was of record, and the former chancery suit in which appellant's title was established, begun before the code of 1892 went into effect, was pending, and that the appellee was not in possession of the land.  · It is manifest from the

record that the case was made to turn in the court below on the fact that appellee bought from Taylor, as is alleged, in good faith, without actual notice of appellant's title; and although appellant's deed was duly recorded, and its bill pending—governed, as to the *lis pendens* notice, by the law prior to the code of 1892—the court modified instructions 3, 4, and 5, asked by plaintiff so as to hinge plaintiff's right to recover on the want of such actual notice. These modifications were all erroneous. No notice was necessary, and, if any had been, the appellee was charged with knowledge of the true state of the title by the record of the deed of appellant, and was bound also by the *lis pendens* notice. *Evans* v. *Miller*, 58 Miss., 120; *Allen* v. *Poole*, 54 Miss., 323. The charges should have been given as asked, as should also charges 6, 7, 8 and 9. As to the ninth, plaintiff only asked for the value of the trees standing in the woods, which, as shown by the evidence, was several hundred dollars less than their value at the mill. If appellant was willing to take less than it was entitled to (as to which see *Skinner* v. *Pinney*, 45 Am. Rep., 1), appellee would be benefited, not harmed, thereby. And the charge No. 1, given for appellee, was erroneous for reasons above stated

But it is insisted with great ingenuity and earnestness that neither trespass *de bonis asportatis* nor trover will lie to recover of a purchaser from a disseizor, or from the disseizor himself, the value of trees cut from the land of the true owner, during possession by such disseizor. It is said that the doctrine of *Emrich* v. *Ireland*, 55 Miss., 390, goes to the extent of holding only that trespass *quare clausum fregit* may be brought against the disseizor to recover damages to the close intermediate the disseizin and re-entry by the true owner, after re-entry; that case being a suit to recover the damages to the freehold occasioned by the removal of a log house and fence. The reason assigned for the distinction is, that the possession of the true owner, by a legal fiction, relates back for this particular purpose of bringing *quare clausum fregit* for such damages to

the freehold, and for that purpose only, and that it does not so relate back to enable the true owner, after re-entry, to recover the value of trees severed from the freehold intermediate the disseizin and the re-entry, from a disseizor who has so cut them while in possession, or any purchaser from him, or any second disseizor; and *Brothers* v. *Hurdle*, 10 Ired., 490, s. c. 51 Am. Dec., 400, is cited in support of, and does squarely maintain, the contention.

But the precisely opposite doctrine is announced in an opinion of great force by Savage, C. J., in *Morgan* v. *Varick*, 8 Wend., 587, in the course of which it is said with great power: "If that be law, any irresponsible person may turn the owner forcibly out of possession of his real estate, sell the buildings and the timber, and thereby destroy the value of the property; he may sell it, too, under ever so suspicious circumstances, . . . and according to the doctrine quoted [the identical doctrine of *Brothers* v. *Hurdle*], the purchaser is safe, and the owner has no remedy." And the law, as thus announced, is also emphatically approved in *Truber* v. *Miller*, 48 Conn., 347, and *Green* v. *Biddle*, 8 Wheat., 75, and by Mr. Freeman in a note of great clearness and learning to *Anderson* v. *Hapler*, 85 Am. Dec., 318, where he distinctly shows that the possession relates back to enable the owner, after re-entry, to bring trespass *de bonis* or trover for timber, etc., cut and carried away by the disseizor, while in possession, against such disseizor, and then, after adverting to the authorities holding that such suit could not be brought against strangers or anyone other than the disseizor, he says: "On the other hand, there is weighty authority to the contrary, and to the effect that after re-entry the disseizee may have his action of trespass, either against the disseizor, his lessee, donee, or feoffee, or against a stranger, for mesne profits and trespass done during the disseizin, on the ground, of course, that by relation the possession is regarded as having been continuously in the plaintiff since the disseizin," citing, with approval, *Morgan* v. *Varick, supra*

(so unsatisfactory to Pearson, J., in *Brothers* v. *Hurdle*), and many others. And Mr. Freeman then adds that "strangers against whom the doctrine of relation is not effectual, should be strangers who enter under a title upon which they are justified in relying. The doctrine of relation regards the disseizee as having been in possession during the whole period of disseizin, and, therefore, after re-entry, the law cannot regard the disseizor as having been in possession at all, since one or the other must have the possession. Therefore, after ouster, the disseizor has no action against the trespasser during his possession, and consequently the true owner will have the remedy, there being no wrong without a remedy, but against the trespasser only. It is worthy of special observation that in this case of *Brothers* v. *Hurdle* it is held that such trees severed, as described above, become chattels, but do not become the property of the owner of the land, because it is said "he is out of possession, and has no right to the immediate possession of the thing," etc. It is true that the property whose value was there sued for in trover, was some fodder raised by the desseizor while in possession, and stacked, but the court properly repudiated any distinction, as to the proposition under consideration, between severed fodder and severed tress—*fructus industriales* and *fructus naturales.*

But the very opposite of this doctrine is held in *Harris* v. *Newman*, 5 How. (Miss.), 654–658, and in *Evans* v. *Miller*, 58 Miss., 120. In the first named case, *Harris* v. *Newman*, Sharkey, C. J., declared that if Harris, the defendant in trover, had really had title and right of possession, trover could not have been maintained, "because, being owner of the timber before it was cut into wood, he would own the wood also," and (page 658) that, "when trees are severed from the soil, . . . the right of the owner of the trees is not divested," etc. It was an action of trover by Newman, the true owner, for the value of cord wood cut by Harris, the disseizor, while in possession, Newman having re-entered.

It is further to be noted that *Brothers* v. *Hurdle* is a North Carolina case, and that it is shown by Mr. Proffatt, in the note to *Hostler's Admr.* v. *Skull*, 1 Am. Dec., 585, that the "courts of North Carolina have gone further than any of our courts in requiring both title and possession to maintain trover;" and that *Brothers* v. *Hurdle*, though adhered to in *Branch* v. *Morrison*, 5 Jones (N. C.), 17, was criticised therein by counsel. The reasoning in the case is wholly unsatisfactory to us.    But the view we take is supported, also, by Liford's case, found in 6 Coke, 46*b* (not 11 Coke, 51, as erroneously cited in *Emrich* v. *Ireland*, *supra*), which we have carefully examined.    The singular thing about this case is that it was misconceived both in *Brothers* v. *Hurdle* and *Morgan* v. *Varick*, *supra*.    In the former, Pearson, J., said that Lord Coke suggested a distinction between such things as corn, etc., which come by the act of the party, and such things as trees, which come by the act of God.    Lord Coke simply said that distinction was suggested by certain year books, but himself repudiated the distinction.

So, in *Morgan* v. *Varick*, Savage, C. J., wrestles with Liford's case as contrary to his view, when it directly supports him.    What he quotes is merely Coke's statement of what the year books have held.    What Coke himself says on page 51*b* is as follows: "But, upon consideration of all the books, it has been resolved and adjudged that it is all one [as to *fructus industriales* and *naturales*], and there is no diversity betwixt them; for the rule and reason of the law is, as has been said, that, after the regress of the disseizee, the law adjudges, as to the disseizor himself, that the freehold has continued in the disseizee, which rule and reason doth extend as well to corn as to trees or grass, etc.; the same law if the feoffee or lessee or the second disseizor sows the land, or cuts down trees or grass, and severs or carries away or sells them to another; yet, after the regress of the disseizee, he may take as well the corn as

the trees and grass, to what place soever they are carried, for the regress of the disseizee has relation as to the property to continue the freehold, against them all, in the disseizee *ab initio*, for the taking them out of the land cannot alter the property, and, if the disseizee takes them, they shall be recouped in damages against the disseizor," which case is, therefore, in perfect harmony with our decisions, *Harris* v. *Newman* and *Evans* v. *Miller*, and the other authorities collated by Mr. Freeman in note *supra*. Trover or trespass *de bonis asportatis* can be maintained by the disseizee, the true owner, after his re-entry, for the value of trees cut by the first or second disseizor or their grantees intermediate the disseizin and such re-entry.

As to trover—and one of these counts is in trover—it is expressly so held in *Heath* v. *Ross*, 12 Johns., 140 (85 Am. Dec., 325, note). See, particularly, the whole of this masterly note, to which we make special reference. And see, also, 26 Am. & Eng. Enc. L., 774–8. *Miller* v. *Wesson*, 58 Miss., 831, does not militate against this doctrine. The cases cited there (*Mather* v. *Trinity Church*, 3 Serg. & R., 509, and others) merely hold that the true owner, while out of possession, cannot maintain trover for the value of things severed from the freehold, and converted, as against one in actual adverse possession, claiming title, on the ground that it would necessitate a trial of the title to the land in an action of trover, which would be greatly inconvenient. We say nothing as to this last point, though this very case, *Miller* v. *Wesson*, held that such title was triable in an action of debt to recover the statutory penalty for cutting trees. But the general proposition that the disseizee, while disseized, cannot maintain trover, against one in actual adverse possession for trees cut by him while in possession (see 85 Am. Dec., 322, note), provided the possession is "adverse, so as to amount to a disseizin," affords appellee no comfort; for it was not in adverse possession, but simply bought the trees, as counsel well says, "miles away, at its mill."

But it is next contended that the general issue (not guilty) put in issue the possession on these counts.    It is conceded that, under the rules as to pleading in force in England (Hil. T., 4 Will. IV., Steph. Pl., Append., note 44, rule 5), the general issue (not guilty) is narrowed in its scope so that in trespass *quare clausum fregit* it admits the possession and the right of possession, and ·in trespass *de bonis asportatis* it admits the plaintiff's property in the goods, and in both puts in issue only the commission of the trespasses, as stated by Steph. Pl., secs. 159, 160.    But it is said that these rules are not in force in this country (*Id.*, p. 162, note 20), nor in this state.    It is said in the case of *Tittle* v. *Bonner*, 53 Miss., 585: "Our statutes [on pleading] intended to correct the evil which resulted from the general form of pleading before prevalent, and to require every affirmative matter to be pleaded specially or given notice of, so as distinctly to inform the opposite party of the precise ground of contest on which he is to be met by his adversary.  .  .  .    The framers of our present law of pleading, as regulated by statute, had in view the valuable improvements introduced by the courts of England by the Reg. Gen., Hil. T., 4 Will. IV., and the statutes on the subject should be so applied as to effectuate the object in view."    This was said, however, with reference to affirmative matter, which should be pleaded specially, or notice given of it under the general issue. Under the Hilary rules (rule 1, in Steph. Pl., Append., note 44), *non assumpsit* is not admissible at· all in an action upon a bill of exchange; but *Tittle* v. *Bonner* was such an action, and the plea of *non assumpsit* was not condemned.

The effect of not guilty in trover, under the Hilary rules, is clearly pointed out in 26 Am. & Eng. Enc. L., 809, 810, where it is said: "The general issue in trover is not guilty. There is some conflict of authority as to the right of the defendant to show, under such plea, that the plaintiff had no such interest in the property as would authorize him to sue in trover. It is generally held in the United States that he can, and this

was formerly the rule in England; but, since the adoption of the pleading rules of Hilary term, the general issue of not guilty is there held to operate only as a denial of the conversion, and not of the plaintiff's title to the goods, and this is the rule adopted in some states.    Under these rules, if the defendant wishes to put in issue the plaintiff's right to the possession of the goods, he should traverse that he was possessed of them as of his own property in manner and form as alleged in the declaration,'' citing, in note 2, many authorities, and, in note 1, page 811, cases from Massachusetts, New York, and Florida. But *Alexander* v. *Eastland*, 37 Miss., 558, holds expressly that not guilty in trespass does not admit the possession.    It is not very clear from the report whether this case arose before or after the code of 1857, wherein was first set forth the statute law of pleading declared in *Tittle* v. *Bonner* to have been adopted in view of the valuable improvements made by the Hilary rules.    Logically, of course, if these rules are meant to be enforced here, not guilty in trespass *quare clausum* admits plaintiff's possession and right of possession, and in trespass *de bonis* his property in the goods, and in trover that he has such interest in the property as entitles him to maintain trover; and there may be much to commend this practice.    But these rules have never been adopted by statute here.    An inspection of them (Steph. Pl., Append., note 44) will show that they are not in force here as to the effect of the general issue in several forms of action; and while, as to affirmative matters, as held in *Tittle* v. *Bonner*, *supra*, they must be specially pleaded, or notice of them given under the general issue, we do not think the Hilary rules are themselves in force with us.    Not guilty with us, as at common law, does not admit in trespass the possession, or in trespass *de bonis* or trover the property in plaintiff.    But it is settled with us that all that is necessary to maintain trover is the right to immediate possession.    *Dejarnett* v. *Haynes*, 1 Cush., 600; *Harris* v. *Newman*, *supra; Ware* v. *Collins*, 35 Miss., 230, 231.    Indeed, under our statute (§ 671,

code 1892) abolishing forms of action — a most wholesome statute—as construed in *Evans* v. *Miller*, 58 Miss., 120, the form of action seems clearly immaterial. What we have said sufficiently indicates the course the case should take on the new trial.

*Reversed and remanded.*